IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


AARON DOUGLAS PUGH,                        §
                                          §
        Petitioner,                       §
                                          §
                                          §
v.                                        §          2:08-CV-169
                                          §
                                          §
RICK THALER,                              §
Director, Texas Dep't of Criminal Justice, §
Correctional Institutions Division,       §
                                          §
        Respondent.                       §


## REPORT AND RECOMMENDATION TO DENY PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Petitioner AARON DOUGLAS PUGH has filed a Petition for a Writ of Habeas Corpus by

a Person in State Custody challenging his conviction out of the 137th District Court of Lubbock

County, Texas for the offense of burglary of a habitation with intent to commit robbery and the

resulting fifty-year sentence.  For the reasons set forth below, it is the opinion of the undersigned

United States Magistrate Judge that petitioner's federal application for habeas corpus relief should

be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

In January 2005, petitioner was indicted for the felony offense of burglary of a habitation

with intent to commit robbery.  (*State v. Pugh*, No. 2005-408,028, 137th District, Lubbock County,

Texas, Clerk's Record [hereinafter CR], pg. 4).  The following statement from the appellate court's

opinion provides a factual background of the case:

> On January 14, 2000, during the early morning hours, the home of Mike Hogan at Buffalo Springs Lake near Lubbock was broken into and robbed of approximately $100,000. Hogan, his live-in girlfriend Maria Guillot, and his five-year-old daughter were in the home at the time. Two men dressed in black and wearing gloves and black ski masks tied up Hogan and Guillot, and beat and abused Hogan in order to force him to reveal where he kept cash that they believed was in the residence. After the men finally found the money, they left the house.

> The two men involved in the crime were identified by Julie MacKenney, who had formerly worked . . . with Guillot. She met Hogan through Guillot and had driven from Amarillo to Lubbock on several occasions to . . . [meet] with Hogan and Guillot . . . During one of the times she had been at Hogan's home, he had shown her large amounts of cash that he kept there. MacKenney then told a number of people, including [Pugh], about the money at Hogan's house.

> According to MacKenney, [Pugh] and his brother George Franklin wanted to rob Hogan, and she went with them to help them do so. MacKenney drew a map of the house, purchased duct tape for [Pugh] at a Walmart store in Lubbock, drove [Pugh's] red Suburban into the Buffalo Springs Lake area while [Pugh] and Franklin hid in the vehicle, and waited outside the house while [Pugh] and Franklin broke into the home and robbed and beat Hogan. She received $5000 out of the stolen money for her efforts.

*Pugh v. State*, No. 07-05-0187-CR, 2007 WL 686639 at *1 (Tex. App.—Amarillo, March 7, 2007, pet. ref'd). On February 17, 2005, a jury found petitioner guilty, and the trial court assessed punishment at fifty years' incarceration. The judgment was affirmed on direct appeal. *Id*.

After the Court of Criminal Appeals refused the petition for discretionary review of the adverse appellate decision, petitioner filed a state habeas corpus application. On November 19, 2008, the Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing. Even though the state court had not yet ruled on the state habeas corpus application, petitioner filed the instant federal habeas corpus petition in September 2008.

## II.
## PETITIONER'S ALLEGATIONS

In his federal application, petitioner appears to contend the State of Texas is holding him in

violation of the Constitution and laws of the United States for the following reasons:

1.      Petitioner is actually innocent.

2.      Petitioner received ineffective assistance of trial counsel because counsel failed to
        a.      interview a witness,
        b.      conduct an adequate pretrial investigation,
        c.      present exculpatory evidence,
        d.      move for a continuance, and
        e.      object to the State's use of perjured testimony.

3.      Petitioner received ineffective assistance of appellate counsel because counsel failed
        to
        a.      adequately confer with petitioner,
        b.      interview a witness,
        c.      investigate facts pertinent to the case, and
        d.      raise certain issues on appeal.

4.      The trial court abused its discretion by denying petitioner's motion for a mistrial.

5.      The State knowingly and intentionally presented perjured testimony at trial.

## III.
## STANDARD OF REVIEW

Petitioner may not obtain habeas corpus relief in this Court with respect to any claim

adjudicated on the merits in the state court proceedings unless the adjudication of the claim resulted

in (i) a decision contrary to clearly established federal constitutional law or (ii) a decision based on

an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings.  28 U.S.C. § 2254(d).  All factual determinations made by a state court are presumed

to be correct, and a petitioner can rebut such presumption only by presenting clear and convincing

evidence otherwise.  *Id.* § 2254(e).

In his state habeas corpus application, petitioner raises the same arguments raised in the federal habeas corpus petition. The Texas Court of Criminal Appeals denied without written order on findings of the trial court without a hearing petitioner's state habeas corpus application. *In re Pugh*, WR-70,750-01. Therefore, the state court heard and adjudicated, on the merits, the claims petitioner presents in his federal habeas corpus petition. *See Harrington v. Richter*, 131 S.Ct. 770, 784 (2011) (holding a state court's denial of a state habeas corpus application without written order is an adjudication on the merits). Petitioner's burden before this Court is significantly heightened in that petitioner cannot prevail even if he shows the state court's determination was incorrect. Petitioner must additionally show the state court unreasonably applied federal law or made an unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied, Neal v. Epps*, 537 U.S. 1104 (2003). As detailed below, Petitioner has failed to meet this burden.

IV.
ACADEMIC INNOCENCE

In his first ground of error, petitioner contends he is actually innocent. A free-standing actual innocence claim is not cognizable on federal habeas review. *See Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993). A federal habeas court does not concern itself with petitioner's guilt or innocence—that is an issue of fact for determination by the state courts, not the federal courts on habeas review. *Id.*, 113 S.Ct. at 860. The sole question a federal court considers on habeas review is whether the petitioner's federal constitutional rights were violated. *Id.*, 113 S.Ct. at 860.

In the memorandum supporting the petition, petitioner contends his brother, George Franklin, would have testified petitioner was not involved in the burglary. According to petitioner, six weeks

before trial began, "Franklin stated that he and an accomplice witness, Julie MacKenny's boyfriend . . . had actually committed the burglary and Petitioner had nothing to do with it. Franklin also stated he was willing to give his testimony." (Memorandum in Support of Petition for Writ of Habeas Corpus, doc. 2, filed Sept. 9, 2008 [hereinafter Memo], pg. 7). Petitioner never states to whom Franklin made these statements. He additionally fails to include any affidavit (or any other statement) directly from Franklin. In fact, the only evidence supporting petitioner's contention is petitioner's own statements, which do not provide an adequate basis for federal habeas corpus relief. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (establishing a petitioner's claims must be based upon record evidence). Even if petitioner could correct the deficiencies identified, this claim would still fail. As set forth above, petitioner's claim that the newly discovered evidence of his brother's testimony supports his claim of actual innocence is not cognizable on federal habeas review as a free-standing claim. *See Herrera*, 506 U.S. at 404, 113 S. Ct. at 862.

## V.
## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his second ground of error, petitioner contends his conviction was obtained in violation of his constitutional right to effective assistance of counsel. The standard for judging a petitioner's contention he is entitled to relief on the ground his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064. An attorney's performance was deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.*, 104 S.Ct. at 2064. An attorney need not provide perfect representation. *Id.*, 104 S.Ct. at 2064. Rather,

counsel's performance must not have fallen below the standards of reasonably competent representation as determined by the norms of the profession. *Id.*, 104 S.Ct. at 2064. A reviewing court's scrutiny of trial counsel's performance is highly differential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065.

Additionally, a petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, a petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Id.* at 687, 104 S.Ct. at 2064. To prove prejudice, a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998).

This Court's review is restricted beyond the highly deferential *Strickland* standard, however. *Harrington*, 131 S.Ct. at 788. A petitioner will not be successful on federal habeas corpus review simply by establishing deficient performance and prejudice. *Id.* Rather, the question this Court must answer is whether there is any reasonable argument the state court could have relied upon in determining the *Strickland* standards were met. *Id.* If such an argument does exists, a petitioner's ineffective assistance of counsel claim on federal habeas corpus review will fail. *Id.*

### A. Failure to Interview Witness and Conduct a Pretrial Investigation

Petitioner initially contends he received ineffective assistance of counsel because his trial attorney (i) failed to interview George Franklin, who, according to petitioner, was willing to testify and exonerate petitioner, and (ii) failed to conduct an adequate pretrial investigation of Franklin's version of events.

Because the decision of which witnesses to call at trial is essentially one of strategy, and because allegations of what a witness would have said are largely speculative, such claims are looked upon with disfavor. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). In order to prevail on a claim of ineffective assistance of counsel for failure to call a witness, a petitioner must show the witness would have been available and willing to testify and the witness's testimony would have been favorable. *Id.*; *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Likewise, a petitioner alleging inadequate investigation must show what an adequate investigation would have uncovered and how the defense would have benefitted. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart*, 782 F.2d at 1282. A petitioner cannot "simply allege but must affirmatively prove prejudice" when complaining of counsel's failure to investigate. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

In an affidavit filed during the state habeas corpus proceedings, petitioner's counsel said,

> I spoke with Mr. Franklin's attorney, Brian Murray, many times regarding this case, and it was my understanding that Mr. Franklin consistently claimed to have no knowledge of the crime and was innocent of any wrongdoing. As such, it was my opinion that Mr. Franklin would be of no use to us at trial, and there was no version of the facts of this case that Mr. Franklin could or would provide.

*In re Pugh*, WR-70,752-01, State Record Created upon Application for Writ of Habeas Corpus, [hereinafter SHCR], pg. 84. In its Findings of Fact and Conclusions of Law, the trial court, relying upon counsel's affidavit, stated, "[t]rial counsel had no viable means of questioning . . . George Franklin." *Id.*, pg. 209. In reference to petitioner's contention regarding his attorney's failure to conduct an adequate pre-trial investigation, the trial court said, "Applicant supplies no indication of what trial counsel could have done to 'investigate [Franklin's] account' of the events surrounding the burglary, particularly the purported absence of Applicant's involvement in it." *Id.*

The Texas Court of Criminal Appeals ruling denying petitioner's application for state habeas relief without a written order on the findings of the trial court is a determination on the merits that the trial court's Findings of Fact and Conclusions of Law were correct and that petitioner's attorney had no legal means of questioning Franklin and could not have done anything more in pretrial investigation. That finding is presumptively correct, and petitioner has provided no evidence to contradict the presumption. *See Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983). Instead, in rebuttal of this presumption, petitioner only offers the same argument presented in the state habeas proceedings, i.e. his own conclusory statements and conjecture, which are insufficient to raise a constitutional issue in a habeas proceeding. *See Ross*, 694 F.2d at 1011. The state court's determination that counsel's affidavit was truthful and counsel's actions thus were not violative of *Strickland* was reasonable. *Harrington*, 131 S.Ct. at 788.

Assuming everything petitioner alleges is true, however, petitioner never demonstrates how his counsel's performance was deficient. Regarding any failure to call a witness, petitioner has not shown Franklin was available and willing to testify, and he has not shown Franklin's testimony would have been favorable. *See Alexander*, 775 F.2d at 602. As petitioner himself admits, counsel attempted to speak with Franklin, but was limited to speaking only with Franklin's attorney. (Memo, pg. 7). If counsel could not have access to Franklin before trial, there is no reason to believe Franklin was willing and able to testify at trial. *See id.* Furthermore, apart from petitioner's own statement the only evidence, in the form of counsel's state habeas corpus affidavit, indicates Franklin maintained he had no knowledge about the incident. SHCR, pg. 84. Moreover, Franklin had a Fifth Amendment right to refuse to testify, and petitioner presents no evidence indicating Franklin was willing to waive such rights for petitioner and make self-incriminating statements to

exonerate petitioner. Finally, in addition to failing to establish Franklin was willing and able to testify, petitioner has failed to establish Franklin's testimony would have been favorable. *See Alexander*, 775 F.2d at 602.

Regarding any failure to investigate, petitioner has not shown what additional investigation his attorney should have performed and what such an investigation would have uncovered. *See Nelson*, 989 F.2d at 850. Petitioner theorizes an investigation of Franklin's version of the facts would have included review of a security camera recording from the night of the incident showing Franklin and another male buying ski masks. Counsel's affidavit, relied upon by the state court, indicates that not only did he review the security footage from the store, but that such footage left unresolved the issue of who was with Franklin at the time the masks were purchased. Moreover, the security camera footage referenced by petitioner was entered into evidence at trial and played for the jury over the objection of petitioner's attorney. (*State v. Pugh*, No. 2005-408,028, 137th District, Lubbock County, Texas, Reporter's Record [hereinafter RR], vol. 8, pg. 218). Contrary to petitioner's assertion, the evidence indicates counsel did review the recording and was therefore not deficient. *See Nelson*, 989 F.2d at 850. Additionally, because the security footage was viewed by the jury that found petitioner guilty, petitioner has no valid claim that the video would have exonerated him. He cannot prove prejudice. *See Wilkerson*, 950 F.2d at 1065. Petitioner's first two arguments of ineffective assistance of trial counsel are without merit, and the state court did not err in denying these claims.

### B. Failure to Present Exculpatory Evidence

In his third contention of ineffective assistance of trial counsel, petitioner asserts his trial attorney erred by failing to present exculpatory evidence. During their investigation, police

surveillance units followed petitioner to a house. (RR vol. 8, pg. 214). During the search of that house, police discovered two key pieces of evidence: (i) a black ski mask and (ii) a Wal-Mart receipt for a ski mask and two pairs of gloves. (*Id.*, pgs. 197, 199, 216). The receipt, from an Amarillo Wal-Mart, was dated January 13, 2004 at 11:23 p.m., hours before the burglary. (*Id.*, pg. 216). The police used the receipt to determine the Wal-Mart and specific cash register used in the transaction. Based on the receipt, Wal-Mart security personnel were able to locate the security camera footage showing George Franklin, along with an unidentifiable man, purchasing a ski mask and two pairs of gloves. (*Id.*, pgs. 220-21).

At trial, the surveillance tape was admitted and played for the jury over the objection of petitioner's attorney. (*Id.*, pgs. 223-26). Petitioner now contends the tape proves that the unidentified male accompanying Franklin was in fact the boyfriend of Julie MacKenney, who had originally incriminated Franklin and petitioner in the burglary. (Memo, pg. 9). Petitioner appears to complain the objection by his attorney to the surveillance video was improper.

In his affidavit, petitioner's trial attorney explained his reason for objecting to the video:

> I did not want that evidence admitted, as it showed a co-defendant purchasing a ski mask and gloves just hours before the robbery. In my opinion, it would have served to corroborate the testimony of Julie MacKenney, another co-defendant, and it would have, in my opinion, given credibility to her story.

SHCR, pgs. 84-85. In reliance on this statement, the trial court said, in its Findings of Fact and Conclusions of Law,

> Trial counsel's explanation of why he objected to the showing of the Wal-Mart security tape to the jury, i.e., to avoid corroborating Julie MacKenney's testimony, giving credibility to her testimony, was a reasonable trial strategy. Even if the security tape showed that [Pugh] was not one of the persons depicted on the tape, he has not shown that there was a reasonable probability that the outcome of the trial would have been different.

*Id.*, pg. 209.

The affidavit of petitioner's attorney indicates the objection was made as a part of reasoned trial strategy. The video supported the statement of Julie MacKenney, which was that she and petitioner planned the burglary in Amarillo and traveled with Franklin to Lubbock to commit the offense. (RR vol. 6, pg. 21). The video additionally linked petitioner to the Wal-Mart receipt for a ski mask and gloves, which was found at a location police observed petitioner enter and which led police directly to the Wal-Mart security footage. Even if it was impossible to determine from the surveillance footage who was with Franklin at the time of the purchase, the video was not helpful to the defense, and counsel was not deficient in objecting to it. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Additionally, petitioner cannot demonstrate he suffered any prejudice because counsel's objection was overruled, and the tape that petitioner contends is exonerating was shown to the jury that found him guilty. *See id.* at 687, 104 S.Ct. at 2064. The state court's refusal to grant petitioner habeas corpus relief was not an unreasonable determination. *See* 28 U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 788. This ground is without merit.

### C. Failure to Move for a Continuance

Petitioner contends his trial attorney rendered ineffective assistance of counsel because he failed to move for a continuance after discovering the State withheld exculpatory evidence. Mike Hogan, one of the burglary victims, originally told police the burglars wore black leather ski masks and that he was positive "the masks were not cotton or a toboggan." (RR vol. 7, pg. 287). At trial, however, he testified the burglars wore black ski masks, but he was *uncertain* of the type of material from which they were made. (*Id.*, pg. 255). After this testimony, petitioner's attorney took one of the prosecutors on voir dire to determine the extent of the prosecution's knowledge of this

contradiction in the victim's memory. (RR vol. 9, pg. 4). During this voir dire, the prosecutor admitted the discrepancy came up during a pre-trial interview with the victim, but the prosecution did not think they were required to disclose the discrepancy because it concerned only an unimportant detail and, as such, was not material. (*Id.*, pg. 7). Based on this potential *Brady* violation, petitioner's attorney moved for a mistrial, which the trial court denied. (*Id.*, pg. 11); *see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Petitioner's attorney did not seek a continuance following the denial of the motion for a mistrial.

Under Texas law, "[w]hen evidence withheld in violation of *Brady* is disclosed at trial, the defendant's failure to request a continuance waives the error or at least indicates that a delay in receiving the evidence was not truly prejudicial." *Apolinart v. State*, 106 S.W.3d 407, 421 (Tex. App.—Houston [1st Dist] 2003, aff'd on other grounds, 155 S.W.3d 184; *Gutierrez v. State*, 85 S.W.3d 446, 452 (Tex. App.—Austin 2002, pet. ref'd); *Pugh*, 2007 WL 686639 at *2. In his affidavit, petitioner's attorney admits, "I believe that I should have requested a continuance when my motion for mistrial was denied, in order to properly preserve error. In the heat of the moment, I did not, and it was not trial strategy to not request a continuance." SHCR, pg. 85. In its Findings of Fact and Conclusions of Law, the trial court concluded there was no merit to the *Brady* argument in the first place because the difference in the victim's story was not material to the case. *Id.*, pg. 210; *see Brady*, 373 U.S. at 87, 83 S. Ct. at 1197 (stating a violation occurs where the prosecution withholds evidence that is "material either to guilt or to punishment"). Therefore, even if petitioner's attorney had moved for a continuance, the trial court likely would not have granted it because it believed there was no *Brady* violation. SHCR, pg. 210. In addition to this finding, the trial court stated in its Findings of Fact and Conclusions of Law,

In any event, [petitioner] was made aware of this change in the witness's recollection in time for him to impeach the victim's testimony on that topic at trial, and he did so extensively. As a result, any failure by the State to disclose the witness's changed recollection before trial was not such as to require reversal—without regard to whether trial counsel made a motion for continuance. Even if trial counsel had known exactly—verbatim—what the witness would testify about at trial before the witness testified, he could have done no more than he did at trial, i.e., impeach the witness with his trial testimony that was inconsistent with his written statement, and to attempt to make it appear that the original prosecutor had "coached" the witness. Consequently, there is no reasonable probability that a different outcome would have resulted but for trial counsel's failure to move for a continuance. As a result, trial counsel was not deficient for failing to move for a continuance. In addition, [petitioner] has failed to show that, under the circumstances, had trial counsel moved for a continuance, the trial court would have erred by failing to grant a continuance.

*Id.*. This decision is not an unreasonable determination of the facts in light of the evidence on the record. *See* 28 U.S.C. § 2254(d)(2). Even if the Court assumes trial counsel was deficient in failing to move for a continuance (a debatable point considering the trial court's suggestion that there were no grounds for such an argument), petitioner has failed to show he was prejudiced by such a failure, i.e. he has failed to demonstrate how a continuance would have benefitted his position. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. The state court's determination was reasonable. *See* 28 U.S.C. § 2254(d)(2).

### D. Failure to Object to Perjured Testimony

In his final argument of ineffective assistance of trial counsel, petitioner contends his attorney "failed to object to the state's knowing use of perjured testimony after proof that the state helped the witness." (Memo, pg. 10). Petitioner states his attorney "proved on numerous accounts that [the victim's] testimony was tainted and perjured . . . and also that the state had improperly coached the witness . . . yet at no time did trial counsel object to the state's knowingly using the perjured testimony." (*Id.*).

Petitioner is apparently referring to the issue discussed in section V.C., *supra*, regarding the

change in the victim's story about his uncertainty regarding the material from which the masks worn by the burglars were made. Petitioner has not, however, shown the victim committed perjury. Perjury is not merely making a contradictory and inconsistent statement under oath. *See United States v. Harris*, 311 U.S. 292, 294, 61 S.Ct. 217, 218, 85 L.Ed. 196 (1940). Rather, perjury is knowingly and intentionally lying under oath. *See id.* In his affidavit, petitioner's trial attorney noted that the victim's testimony was not technically perjured since it was simply a failure to recall a particular detail. SCHR, pg. 85. Moreover, petitioner's trial attorney stated, "It was my opinion that my complaint as to the testimony of the State's witness was heard through my motion for mistrial." *Id.* The trial court also said, in its Findings of Fact and Conclusions of Law, that a variance in recollection by the victim did not amount to perjury. *Id.*, pg. 211. The trial court stated,

> Both the jury and [petitioner] had the prior written statement and the witness's trial testimony before them, fully explored, questioned, impeached, challenged, and attacked. There was no violation of the principles of disclosure of favorable evidence, and even if there had been, the failure to disclose that information was not "material" because [petitioner] had the information in time to make use of it. As a result, trial counsel's failure to object to the purported use of perjured testimony was not deficient performance.

*Id.*, pgs. 211-12. This decision is not based on an unreasonable determination of the facts in light of the evidence on the record. *See* 28 U.S.C. § 2254(d)(2). The state court's determination that this point of error is without merit was reasonable. *See Harrington*, 131 S.Ct. at 788.

## VI.
## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his third ground of error, petitioner contends he received ineffective assistance of appellate counsel due to counsel's failure to raise a claim that (i) petitioner's trial attorney rendered ineffective assistance of counsel, (ii) George Franklin would have stated petitioner was innocent had he been called to testify at trial, and (iii) "the ski mask found at petitioner's wife's house [was] a factory

defect, not fitting the description of any masks described by complainant." (Memo, pgs. 11-12).

An ineffective assistance of appellate counsel claim is also analyzed under the two-pronged test enunciated in *Strickland v. Washington. Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992). Thus, a petitioner must demonstrate appellate counsel was deficient and the deficiency prejudiced his case. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. To prove prejudice, a petitioner "must show a reasonable probability that, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764,145 L.Ed.2d 756 (2000).

Although a right to effective assistance of appellate counsel exists, it does not include a right to have every nonfrivolous issue raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 752, 754, 103 S.Ct. 3308, 3313, 3314, 77 L.Ed.2d 987 (1983); *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001) (citing *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). Instead, appellate counsel's decision to raise certain issues and not others is evaluated in the same manner as trial counsel's decisions at trial, i.e., was "counsel performing in a reasonably effective manner." *Green*, 160 F.3d at 1043.

A Texas appellate court will not address the merits of an issue on direct appeal if there is no evidence on the record regarding the claim. "[M]ere assertions in a brief not supported by evidence in the record will not be considered on appeal." *Franklin v. State*, 693 S.W.2d 420, 431 (Tex. Crim. App. 1985); *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004). Therefore, apart from filing a motion for a new trial in hopes of developing the record for appeal, there is little a defendant can do to persuade an appellate court to consider an argument based on facts outside the official trial record. *See Oldham v. State*, 977 S.W.2d 354, 361 (Tex. Crim. App. 1998).

In line with Texas law, the trial court's Findings of Fact and Conclusions of Law issued

during the state habeas corpus proceedings state:

> [O]n direct appeal, an appellate court cannot consider matters that are not shown in the record of the trial below . . . Thus, even if appellate counsel had done those things which [petitioner] contends he should have done, and even if he had secured affidavits, statements, or other evidence to support [petitioner's] contentions or to exculpate him, that matter would not have been available to him for use on direct appeal . . . appellate counsel was not deficient for not wasting his time and the time of the Seventh Court of Appeals on a claim that could never have been established on the record available on direct appeal.

SHCR, pg. 214.  This is a correct statement.  All of the arguments petitioner contends his appellate attorney should have raised had no support in the record.  Specifically, there is no evidence in the record, and petitioner has failed to direct this Court to any record evidence, establishing ineffective assistance of trial counsel.  Petitioner has identified no record evidence indicating what Franklin's testimony would have been had defense counsel called him at trial nor has he cited any record evidence shedding light on petitioner's argument regarding the likeness of the ski mask found at his wife's residence to that used by the burglars.  There was no motion for new trial filed, and no other actions were taken to develop the record on these issues.  Consequently, these arguments petitioner contends appellate counsel should have raised were arguments for which there was no recorded evidentiary proof.  As the trial court concluded, it is likely the appellate court would have refused to address the merits of such grounds of error.  *See Franklin*, 693 S.W.2d at 431.  Appellate counsel was not deficient in failing to raise arguments the appellate court would have refused to review.  *See Jones*, 463 U.S. at 752, 103 S.Ct. at 3313.

Moreover, petitioner has not shown prejudice.  *See Smith*, 528 U.S. at 285, 120 S.Ct. at 764.  For the reasons discussed earlier, petitioner has not shown how his trial counsel's purportedly deficient performance harmed him.  He has not, apart from his own statements, shown Franklin's testimony would have exonerated him.  He has not, apart from his own statements, shown the ski

mask recovered by the police was different from the one worn by the burglars and/or that any such difference would have changed the jury's verdict. There is no reasonable probability petitioner would have prevailed on appeal had appellate counsel raised these arguments. *See id.*, 120 S.Ct. at 764. The state court's determination that appellate counsel did not render ineffective assistance by failing to raise these issues was reasonable. *See* 28 U.S.C. § 2254(d). Petitioner's third ground of error is without merit.

## VII.
## REFUSAL TO GRANT MISTRIAL

In his fourth ground of error, petitioner contends the trial court abused its discretion by denying his motion for a mistrial. As discussed in section V.C., *supra*, after the victim's story about the material of the ski masks worn by the burglars changed, petitioner's trial attorney took one of the prosecutors on voir dire about the State's knowledge of whether the testimony was going to change and whether the State had suggested the change. At the end of the voir dire, petitioner's attorney moved for a mistrial, which the trial court denied. (RR vol. 9, pg. 7).

On direct appeal, petitioner contended, "the trial court erred in denying his motion for mistrial due to the State's allegedly withholding exculpatory evidence." *Pugh*, 2007 WL 686639, at *1. The appellate court determined the issue was procedurally barred because petitioner had failed to seek a continuance at trial, which is necessary under state law. *Id.* In its Findings of Fact and Conclusions of Law in the state habeas corpus case, the trial court relied on this holding, stating, "[t]his issue was addressed directly by the Court of Appeals on direct appeal, and it was rejected. It cannot now be raised again in this habeas proceeding." SHCR, pg. 215.

"When a state-law default prevents a state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 504 U.S. 797, 801,

111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991). A federal court can review the merits of a habeas corpus petitioner's procedurally defaulted claims only if he can show cause for the default and prejudice attributable thereto or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

The last court to review the merits of petitioner's claim, which was the Texas Court of Criminal Appeals acting upon the trial court's Findings of Fact and Conclusions of Law, determined the issue was procedurally barred under state law. Consequently, this Court would also be procedurally barred from reviewing this claim were it not for the fact that respondent failed to raise this defense before this Court. *See Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999) (holding "[a] state waives a procedural bar defense by failing to raise the defense in the district court"). Therefore, the Court must address the merits of petitioner's contention.

A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused. *Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.*, 126 S.Ct. at 2190. In order to have his case reversed on a *Brady* violation, the petitioner must show the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Id.*, 126 S.Ct. at 2190.

In this habeas application, petitioner fails to demonstrate how the variance between whether the victim thought the ski masks worn by the burglars were made of leather or something other than

leather was material.[1]  Unlike other cases where a *Brady* violation occurred because the prosecution

had evidence directly supporting the defense and completely failed to give it to the defense, the

prosecutors in this case discovered the victim could not recall a specific detail involving the material

of the burglars' ski masks.  *See id.* at 868, 126 S.Ct. at 2189.  The defense uncovered this variance

at trial and thoroughly impeached the witness on it.  As the trial court in its Findings of Fact and

Conclusions of Law stated, there was nothing more the defense could have done apart from

impeaching the witness at trial.  SHCR, pg. 210.  Petitioner fails to argue how an earlier knowledge

of the variance or how a continuance would have changed the result of the trial.  This Court also

finds there would have been no great advantage to the defense if it were given this information

before trial began or if a continuance had been granted.  *See Youngblood*, 547 U.S. at 870, 126 S.Ct

at 2190.  Therefore, the evidence of the change in the victim's memory could not reasonably be

taken to put the whole case in such a different light as to undermine confidence in the verdict.  *Id.*,

126 S.Ct. at 2190.  The evidence was not material, and the state court's determination that this point

of error was meritless was reasonable.  *See* 28 U.S.C. § 2254(d).

## VIII.
## STATE'S USE OF PERJURED TESTIMONY

In his fifth ground of error, petitioner contends the State knowingly and intentionally

presented perjured testimony at trial.  "A state denies a criminal defendant due process when it

knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  To obtain

relief, the defendant must show that (1) the testimony was actually false, (2) the state knew it was

---

[1]  In his memorandum supporting his habeas corpus petition, petitioner asserts, "had he been given the undisclosed testimony, he could have, and would have shown that the mask in question was a factory defect and could not have been (according to testimony), any mask complainant described."  (Memo, pg. 13).  At trial, petitioner's motion was based on the variance in the victim's recollection of whether the ski mask material was leather or not leather.  Petitioner never presented an argument relating to whether his mask was a factory defect in support of his motion for a mistrial.  His statement therefore has no basis in the record.

false, and (3) the testimony was material." *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

Testimony at trial contradicting an earlier statement made by the witness is not per se false, it "merely establishes a credibility question for the jury." *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *see Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988) (establishing that inconsistencies in a witness's trial testimony are to be resolved by the trier of fact and do not suffice to establish that the testimony was perjured). Furthermore, a bare allegation the State knew testimony was false is insufficient to meet the second prong of this test—there must be some evidence of the State's actual knowledge of the testimony's inaccuracy. *Koch*, 907 F.2d at 531.

Petitioner fails to meet all three prongs of the test. First, his claim relies merely upon a contradiction by the victim regarding a detail of the burglars' attire. This contradiction does not establish the victim was untruthful, it merely creates a question for the jury as to whether the victim's testimony was credible. *See Faulder*, 81 F.3d at 519. Furthermore, there is absolutely no evidence the State knew the statement was false. While the prosecutor knew the victim's memory had changed, there is nothing establishing the State knew the victim was lying when he said he did not remember whether the masks were leather or something other than leather. *See id.* Finally, as discussed above, the testimony was not material to the case.[2] *See id.* Petitioner's fifth ground of error is without merit.

IX.

<u>MOTION TO STAY AND ABEY</u>

While the instant petition was pending, petitioner filed a motion to stay and abey these

---

[2] Petitioner apparently believes the mask discovered at his residence was the only evidence linking him to the burglary, in which case the mask might be material. (Memo, pgs. 14-15). Petitioner fails to recall all of the other evidence linking him to the crime, which includes *inter alia* the written statement and trial testimony of a co-conspirator that petitioner was involved, petitioner's vehicle (matched by its license plate number) going toward the victim's house immediately before the burglary and leaving the house immediately after the burglary, the other burglary victim's statement exactly describing the mask discovered at petitioner's residence, and the receipt discovered in petitioner's possession for a ski mask and gloves bought immediately prior to the burglary.

proceedings. The motion was based upon petitioner's contention that he had discovered new evidence casting doubt on the story of Mike Hogan, one of the burglary victims. Specifically, petitioner states the federal government, in February 2007, indicted the victim on one count of corrupt interference with the Internal Revenue laws and on two counts of structuring currency transactions. According to petitioner, the indictment alleges the victim engaged in the offense from 1999 until 2006. Petitioner avers the charges provide a basis for his new theory that the victim invented a bogus story about the burglary so as to hide money from the Internal Revenue Service.

The Department of Justice press release attached to the motion is dated February 22, 2007. The burglary occurred on January 14, 2005, and the jury found petitioner guilty on February 17, 2005. Petitioner filed the motion to stay and abey on August 27, 2010. Relying upon *Rhines v. Weber*, 544 U.S. 269, 277, 125 S.Ct. 1528, 1535, 161 L.Ed.2d 440 (2005), the Court denied the motion because petitioner did not demonstrate good cause for failing to present the argument at the state level or present a potentially meritorious claim. In that order, the Court incorrectly stated the DOJ press release was dated five days after petitioner's conviction. That inaccuracy, however, does not impact the reasoning behind the denial. Petitioner filed a motion for reconsideration of the motion to stay and abey, which was denied. Petitioner objected to the denial of the motion for reconsideration.

News of the indictment, according to the press release attached to petitioner's motion, was released in February 2007. This was before the opinion on direct appeal was released. Petitioner did not attempt to present this possible issue to the appellate court. When he filed his state habeas corpus application in August 2008, he again failed to present this argument, despite the fact news of the indictment against the victim had been released more than a year before the filing. In fact, petitioner did not present this argument until August 2010, which was well over three years after the

indictment was issued.

Petitioner states he had no reason to be searching newspapers or other news outlets because he had no knowledge of the potential indictment. This excuse does not constitute good cause for the three-year delay. Additionally, petitioner's theory about the victim inventing the entire burglary is not a potentially meritorious claim. In addition to the victim's testimony was the testimony of one of petitioner's accomplices in the burglary, the other burglary victim, and several police officers who investigated the crime. This testimony is in addition to the physical evidence admitted at trial linking petitioner to the burglary, which included petitioner's vehicle going into the victim's gated community immediately before the burglary and exiting immediately thereafter, the receipt linking petitioner to buying a ski mask and two pairs of gloves hours before the burglary, and a plethora of other evidence brought to light during the four-day trial. Petitioner's defense at trial was that he was not involved. That the burglary actually occurred was never contested. Therefore, even if petitioner's excuse that he simply did not know about the indictment against Hogan was sufficient to provide good cause for the three-year delay in presenting this argument, petitioner has never presented any potentially meritorious argument based upon the newly discovered evidence. For that reason, this case does not present a "limited circumstance" for which a stay and abeyance is intended. *See id.*, 125 S.Ct. at 1535. The Court stands on its denial of the motion to reconsider the motion to stay and abey.

## X.
## RECOMMENDATION

Petitioner has failed to demonstrate the state court proceedings "resulted in a decision that was contrary to . . . clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." *See* 28 U.S.C. § 2254(d).  Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner AARON DOUGLAS PUGH be DENIED.

XI.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 11th day of May, 2011.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).